UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRYSLER GROUP, LLC,

      Plaintiff,

v.                                        Case No. 14-12964

EAGLE AUTO-MALL CORP.,               HON. AVERN COHN

      Defendant.
_____/

**MEMORANDUM AND ORDER**
**GRANTING FCA'S MOTION FOR SUMMARY JUDGMENT (Doc. 77)**
**AND**
**DENYING EAGLE'S CROSS MOTION FOR SUMMARY JUDGMENT (81)**

I. Introduction

This is a business dispute in a automotive dealer relationship. Plaintiff Chrysler Group, LLC[1] is suing Eagle Auto-Mall Corporation (Eagle) seeking declaratory relief on the grounds that Eagle has, or will, breach of a letter of intent (LOI) between the parties. (Doc. 1). Eagle counterclaimed (Doc. 31) as follows:

Count I        Declaratory Relief as to Modification of the LOI and FCA's Breach

Count II       Contract Reformation

Count III      Breach of Contract and Duty of Good Faith and Fair Dealing

Count IV      Fraud

Count V       Promissory Estoppel

Eagle also made explicit prayer for specific performance as a form of relief on its claim

_____

[1]Effective December 15, 2014, Chrysler is now known as FCA US LLC (FCA).

for breach of contract.  <u>See</u> Doc. 30.

The case has proceeded in two phases.  Phase I concerned Eagle's claims for reformation of the LOI and modification.  Phase II involved the parties' remaining claims of breach of contract, fraud, and promissory estoppel–the latter claim being asserted by Eagle.  Phase II was stayed pending the outcome of Phase I.  <u>See</u> Doc. 22.

Previously, FCA filed a motion for summary judgment on Counts I and II of Eagle's amended counterclaim, i.e. Phase I of the case.  (Doc. 34).  The Court granted the motion, holding that the LOI controls.  The Court also stated

**The LOI was neither orally modified by the parties nor is it subject to reformation.  The parties' rights and obligations will rise and fall within the parameters of the LOI.**

(Doc. 60 at p. 1) (emphasis added).  As will be explained, the Court's summary judgment decision guided the outcome of the pending motions.

After additional motion practice and the filing of a second amended counterclaim, see Doc. 75, the following claims were at issue:

FCA's claim for declaratory relief

Eagle's clam for breach of contract

Now before the Court is FCA's motion to dismiss or for summary judgment (Doc. 77) and Eagle's cross motion for summary judgment (Doc. 81)[2] on the remaining claims.  For the reasons that follow, FCA's motion is GRANTED and Eagle's motion is DENIED.  This case is DISMISSED.

_____

[2]Eagle did not file a free-standing motion for summary judgment.  Rather, it moved for summary judgment in its response to FCA's motion.

II.  Background

The background of the parties' dispute was described in detail in the Court's

Phase I summary judgment order and will not be repeated in detail.  Relevant to the

remaining claims is the LOI.  The Court has determined that the LOI shapes the parties'

rights and obligations and described the LOI as follows:

> In the LOI, FCA agreed to enter into Chrysler and Jeep Sales and Service
> Agreements with Eagle if Eagle provided a facility "for the exclusive display, sales
> and service of the Chrysler and Jeep vehicles" in compliance with the
> requirements of the LOI, including the completion of all requirements within the
> specified time periods.  Ex. 3, LOI at CG000279-CG000281, second paragraph
> from top and ¶ 8.
>
> The LOI gave Eagle a choice of three facility options:
> (a) Construct a new facility
> (b) Renovate an existing facility
> (c) Use a facility that already meets the facility requirements of the LOI.
> Ex. 3, LOI at CG000283.
>
> The LOI established specific time periods within which each facility option
> had to be completed:
> (a) 18 months for the construction of a new facility
> (b) 8 months for the renovation of an existing facility
> (c) 90 days for the use of a facility that meets the facility requirements of
> the LOI
> Ex. 3, LOI at CG000279 (second paragraph from top).  The end of the time
> period for each facility option is defined in the LOI as the "Expiration Date."  Id.
>
> The LOI provides that Eagle's failure to complete each requirement within
> the specified time period and, in any event, no later than the Expiration Date,
> would be considered a material breach of the LOI for which FCA would have the
> right to terminate the LOI.
>
> The LOI further provides that FCA "has no obligation to extend any time
> periods set forth in this LOI, even if [Eagle's] inability to comply with a time period
> arises from a cause outside of [Eagle's] control." Ex. 3, LOI at CG000281, ¶¶
> 9-10.
>
> The LOI provides that the facility to be located on the approved site would
> be for the exclusive display, sale and service of Chrysler and Jeep vehicles.  Ex.
> 3, LOI at CG000279-CG000281, second paragraph from top and ¶ 8.  The LOI
> also provides that Eagle shall submit complete architectural plans and
> specifications for the exclusive facility to FCA's Network Manager for FCA's
> review and approval in writing.  Ex. 3, LOI at CG000280, ¶ 6.

(Doc. 60 at p. 5-6).  Eagle opted for the 8 month renovations of its existing facility.  As

3

explained in the Court's summary judgment order, Eagle did not complete the renovations within 8 months and to date, has not renovated its existing facility.

## III.  Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion

4

only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," Hager v. Pike County Bd. Of Education, 286 F.3d 366, 370 (6th Cir. 2002).

5

IV.  Discussion

A.  Dismissal

FCA first contends that Eagle's breach of contract claim should be dismissed. The contract claim, which is found in Eagle's Second Amended Counterclaim, alleges generically that "[FCA] breached the agreement."  (Doc. 76, at ¶72.)  Eagle also alleges vaguely that FCA failed to provide architectural details or design specifications, and that FCA took unreasonable amounts of time.  (See Doc. 76, ¶¶ 63-66).

Eagle also alleges that "Chrysler failed to perform the contract and exercise its discretion in a manner consistent with good faith and fair dealing, but instead exercised its discretion in such a manner so as to defeat Eagle Auto's contract rights."  (Doc. 76, at ¶73.)  This essentially alleges that FCA breached a generic duty of good faith and fair dealing.  Such a claim is not plausible.  As the Court told Eagle more than a year ago, "[t]here's no such action in Michigan."  Ex. 26 to Doc. 48, at 12-13; see also Belle Isle Grill Corp. v. City of Detroit, 256 Mich. App. 463, 476 (2003) ("Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."). Thus, to the extent Eagle is asserting a free standing claim for a breach of the duty of good faith and fair dealing, such a claim must be dismissed.

Moreover, Eagle cannot use the duty of good faith and fair dealing to override express terms of the LOI.  See General Aviation, Inc. v. Cessna Aircraft Co., 915 F.2d 1038, 1041-42 (6th Cir. 1990); Cheesewright v. Bank of Am., N.A., No. 2:11-cv-15631, 2013 WL 639135, at *4 (E.D. Mich. Feb. 21, 2013) ("Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights."

6

(internal quotation marks omitted)); <u>Jacobson v. BH Assocs. Ltd. P'ship</u>, No. 222945, 2001 WL 738408, at *1 (Ct. App. Mich. June 29, 2001) (noting that "[u]nder Michigan law, the implied covenant of good faith cannot override an express provision in a contract," and collecting cases).

A read of Eagle's claim establishes that it is attempting to circumvent the terms of the LOI.  For example, Eagle alleges that FCA failed to extend the 8-month renovation deadline that Eagle selected, or to agree to a "new construction" project with a new completion deadline of 18 months. (See Doc. 76, at ¶ 65; see also Doc. 73, at 5-6.) These assertions contravene the Court's holding that "the terms of the LOI control" and that the "LOI was neither orally modified by the parties nor is it subject to reformation." (Doc. 60 at p. 1.)

Indeed, if Eagle prevailed on its claim such a finding would override several express terms of the LOI, including the terms (1) requiring Eagle to provide an exclusive facility within the 8-month specified time period, (2) stating that Eagle's failure to do so would be a material breach allowing FCA to terminate the LOI, and (3) stating that FCA has no obligation to extend any time periods, even if Eagle's inability to comply arises from a cause outside Eagle's control.  The Court has already held: "[t]he LOI is clear that FCA has no obligation to extend the eight month deadline." (Doc. 60 at p. 28.)  And "Eagle expressly assumed the risk that it could not meet the deadlines in the LOI, even if the failure was not Eagle's fault."  (Doc. 68 at p. 9.)

Eagle has cited no authority that required FCA to grant Eagle a modification and allow Eagle to switch to an 18-month new build option, in contradiction of the LOI's

7

express terms.  Eagle also has not cited any authority to support its contention that FCA

somehow "breached" the LOI by failing to enter into an entirely new agreement which

permitted Eagle to abandon its chosen renovation obligation in favor of a new

construction with a new 18-month deadline.  Nothing in the LOI imposed such an

obligation on FCA, and the implied covenant of good faith and fair dealing certainly did

not require the parties to negotiate an entirely new bargain satisfactory to Eagle.

Finally, Finally, Eagle's request for specific performance (see Doc. 76, at 15) is

moot.  "[S]pecific performance is only applicable when there is a promise or agreement

to enforce."  Van Dyke Partners, L.L.C. v. City of Warren, No. 293721, 2010 WL

5383519, at *5 (Ct. App. Mich. Dec. 28, 2010); see also Heth v. Smith, 175 Mich. 328,

338 (1913) ("To entitle a party to specific performance there must, in the first instance,

be a valid agreement, and also at the time of the suit a mutuality of remedies as well as

of obligations.").  There is simply nothing beyond the terms of the LOI for a court to

enforce.

For these reasons, Eagle's claim for breach as described above must be

dismissed because it fails to state a plausible claim for relief.

## 2.  Summary Judgment

FCA alternatively argues that it is entitled to summary judgment on Eagle's claim

because the terms of the contract (and the undisputed evidence) show that FCA did not

breach any term in the LOI.  Eagle contends that FCA breached the LOI and therefore it

is entitled to summary judgment.  These arguments relate to FCA's request for

declaratory relief, i.e. a declaration that Eagle breached the LOI.  As such, the parties'

8

competing positions as to the breach of the LOI will be considered within the confines of

FCA's request for declaratory relief.  Based on the Court's August 17, 2015 Order

granting FCA summary judgment on Eagle's modification and reformation claims (Doc.

60), the facts necessary to dispose of the remaining material issue—whether Eagle or

FCA breached the LOI—are not in dispute.

### 1.  Eagle's Position - FCA breached the LOI

Eagle concedes that the eight month Expiration Date of the LOI is a material

term, but argues nevertheless that its failure to complete its renovation by that deadline,

as promised, is somehow not a material breach of the LOI.  According to Eagle, the

eight month period within which it agreed to complete its renovations and by which the

LOI expired was not a "hard deadline" and therefore FCA acted wrongfully in

terminating the LOI.

Eagle's argument contradicts the unambiguous language in the LOI which the

Court has determined governs any breach of contract claims.  See Doc. 60 at p. 28.

("The LOI is clear that . . . Eagle's failure to perform [within eight months] is a material

breach that enables FCA to terminate the LOI, and the LOI expires . . . on October 27,

2014." (emphasis added)).  Eagle cannot avoid the unambiguous language of the LOI

that it signed, nor collaterally attack the Court's ruling that the plain language of this LOI

governs the parties' dispute.  See Entm't Prods., Inc. v. Shelby County, Tenn., 721 F.3d

729, 742 (6th Cir. 2013) ("[F]indings made at one point in the litigation become the law

of the case for subsequent stages of [the] litigation.").

There is no dispute that Eagle selected the renovation option, agreed to

complete the renovation "before the Expiration Date," and the LOI expired "eight months from the effective date."  See LOI at ¶¶ 6, 8 and 20.  There is also no dispute that Eagle's failure to complete the renovation by the Expiration Date and obtain an occupancy permit was a "material breach of this LOI" and that, upon this breach, FCA had the right to terminate the LOI without any further obligation to Eagle.  Id. at ¶ 9.

Eagle also contends that FCA breached the LOI by filing this lawsuit without "authority" under the LOI.  This argument does not carry the day.  Paragraph 9 of the LOI is clear that "[c]ompletion of all of the requirements of this LOI . . . within the time periods specified herein and by the Expiration Date are material terms of this LOI" and that Eagle's "**[f]ailure to complete these requirements within the time periods specified herein will be a material breach of this LOI and [FCA] will have the right to terminate this LOI**."  Id. at ¶9 (emphasis added).

Here, there is nothing in the LOI that prohibited FCA from filing a lawsuit.  Moreover, despite the pendency of this case for well over a year and the opportunity to amend its counterclaim at least twice, Eagle has not pleaded, nor ever before argued, that FCA breached the LOI by merely filing this suit.  Thus, the argument is waived and lacks merit.

Eagle also resurrects its good faith argument by contending that FCA did not treat Eagle fairly and therefore violated its good faith obligation under the LOI.  See Liggett Rest. Grp., Inc. v. City of Pontiac, No. 256571, 2005 WL 3179679, at *2 (Mich. Ct. App. Nov. 29, 2005) (implying that where there are "express terms . . . [that] were discretionary with defendants" such "discretionary performance" must be done in good

10

faith).

Here, Eagle says that FCA "should have approved" Eagle's "second set of drawings." (Doc. 81, at 22).  However, as Eagle admits, these "drawings" were not "complete architectural plans and specifications" for the renovation of an exclusive facility as required under ¶ 6 of the LOI, but rather "conceptual plans," by an unlicensed architect, for an entirely different new build that Eagle had no idea when it would begin, let alone complete.  FCA did not act in bad faith by refusing to "approve" Eagle's repudiation of its obligations under the LOI.

Eagle cites Commercial Union Ins. Co. v. Liberty Mut. Ins. Co., 426 Mich. 127, 136-137 (1986), for the proposition that "[w]hen a contracting party pursues a course of conduct that is 'arbitrary, reckless, indifferent, or with the intentional disregard of the interests of the person owed a duty' there is an assumption that the course of conduct was undertaken in bad faith."  (Doc. 81, at 19).  Commercial Union says nothing about any "assumptions" of bad faith, and the case applies "in the context of bad-faith claim against an insurer" for refusal to settle.  See Hanczaryk v. Chapin, No. 313278, 2014 WL 5462600, at *6 (Mich. Ct. App. Oct. 28, 2014).  FCA is not an insurer, and FCA owed Eagle no duty to "assist Eagle" in performing its express promises under the LOI.

Eagle also says that even if its actions gave FCA the right to terminate the LOI, FCA could do so only in good faith, see Doc. 81, at 19, citing JR Watkins Co. v. Rich, 254 Mich. 82, 84-85 (1931).  This argument is unavailing.  "[T]he courts have limited the good faith rule announced in Watkins to situations where one of the parties lacked good faith at the time he or she bargained for the termination right.  If properly bargained for,

11

the right is given full effect and may be exercised for any reason." <u>Cloverdale Equip. Co. v. Simon Aerials, Inc.</u>, 869 F.2d 934, 938 (6th Cir. 1989); <u>Eastway & Blevins Agency v. Citizens Ins. Co. of Am.</u>, 206 Mich. App. 299, 302 (1994) ("Where, as here, a party's discretion to terminate is limited, good faith need only have existed at the time the original agreement was made.").

Here, Eagle litigated in the Court of Appeals for the Second Circuit whether the terms of the LOI were usual and customary.  The court of appeals concluded they were. Eagle, not FCA, selected the eight-month option to renovate an exclusive facility, and then did not perform.  FCA did not control Eagle's performance.  Rather, Eagle selected an option and it was up to it to perform by completing that option.  Because Eagle, not FCA controlled Eagle's performance, FCA was not under an obligation of good faith when it sought to terminate the LOI.  <u>See United States v. Cty. of Muskegon</u>, 33 F. Supp. 2d 614, 626 (W.D. Mich. 1998) aff'd, 298 F.3d 569 (6th Cir. 2002) ("Michigan courts have held that the <u>J.R. Watkins</u> court's requirement of good faith applies only [where] the party exercising the termination clause has control over the other party's performance under the agreement and where the triggering event for the termination clause is the other party's failure to perform.").

Finally, Eagle contends that "courts commonly find that a party has violated the covenant if it has failed to abide by 'reasonable commercial standards.'"  (Doc. 81, at 19-20).  The cases Eagle relies upon are inapposite because here the duties of both parties were set forth with specificity and neither party's duties were defined by the exercise of the discretion reserved to the other party.  See <u>Stephenson v. Allstate Ins.</u>

12

Co., 328 F.3d 822, 827 (6th Cir. 2003) ("[W]hen the parties have unmistakably

expressed their respective rights . . . the covenant does not adhere."); Rory v. Cont'l Ins.

Co., 473 Mich. 457, 461, 703 N.W.2d 23, 26 (2005) ("[T]he judiciary is without authority

to modify unambiguous contracts or rebalance the contractual equities struck by the

contracting parties because fundamental principles of contract law preclude such

subjective post hoc judicial determinations of 'reasonableness' as a basis upon which

courts may refuse to enforce unambiguous contractual provisions.").

Moreover, the record shows that FCA did treat Eagle fairly.  FCA approved

Eagle's proposed site one day after FCA signed the LOI.  Although Eagle's first

"conceptual" proposal did not comply with the LOI, FCA did not immediately state that

Eagle had breached and repudiated the LOI but instead explained the reasons that

Eagle's proposal was unacceptable and gave Eagle another chance to fulfill its

promises.

In the end, the undisputed facts show that FCA did not act wrongfully in filing this

action.  By July 2014 when FCA filed the complaint for declaratory relief, Eagle had not

submitted complete renovation plans or begun the renovation work and had abandoned

its renovation obligation by submitting an entirely new proposal to construct a new

facility that Eagle estimated would take two years to complete.  Eagle's proposal was

inconsistent with its existing obligation to renovate an existing facility within eight

months and therefore a renunciation of its obligations under the LOI.  See Franconia

Assocs. v. U.S., 536 U.S. 129, 143 (2002) ("[T]he promisor's renunciation of a

'contractual duty before the time fixed in the contract for . . . performance' is a

13

repudiation." (citation omitted)).

### 2. FCA's Position - Eagle Breached the LOI

FCA says that there is no genuine issue of material fact that Eagle breached the LOI and, therefore, it is entitled to declaratory relief.  FCA says there is no dispute that Eagle selected the renovation option in the LOI, agreed to complete the renovation "before the Expiration Date," and the LOI expired "eight months from the effective date." FCA also says that there is also no dispute that Eagle's failure to complete the renovation by the Expiration Date and obtain an occupancy permit is a "material breach of this LOI" and that, upon this breach, FCA has the right to terminate the LOI without any further obligation to Eagle.  Finally, FCA says there is no dispute that Eagle did not complete the renovation of its existing facility within eight months of the February 27, 2014 effective date, i.e. by October 27, 2014.

FCA's position is well-taken.  As noted above, the Court has ruled that "the terms of the LOI control" and that the "LOI was neither orally modified by the parties nor is it subject to reformation," and therefore FCA and Eagle are bound by the express terms of the LOI.  (Doc. 60 at p. 1.)  The LOI's terms clearly and unambiguously spell out the parties' rights and obligations.  Eagle is obligated to renovate an existing facility within eight months of the February 27, 2014 effective date of the LOI, i.e. no later than October 27, 2014; and, FCA is obligated to enter into Chrysler and Jeep Sales and Service Agreements with Eagle if Eagle provides a renovated facility for the exclusive display, sales, and service of the Chrysler and Jeep vehicles in a timely manner in compliance with the terms of the LOI, including the completion of all requirements within

14

2:14-cv-12964-AC-RSW   Doc # 99   Filed 09/12/16   Pg 15 of 15   Pg ID 3396

the specified time periods.  The LOI expressly provides that FCA "has no obligation to extend any time periods set forth in this LOI, even if [Eagle's] inability to comply with a time period arises from a cause outside of [Eagle's] control."  (Id. at 6.)

It is undisputed that Eagle failed to complete the promised renovation by the October 27, 2014 deadline to which it agreed.  (Id. at 16, 30 ("Eagle was unable to comply with [the LOI's] terms"); Undisputed Facts, at ¶ 49.)  It also is undisputed, particularly after the Court's summary judgment decision, that Eagle's failure to complete the agreed-upon renovation by the completion deadline is a material breach, for which FCA has the right to terminate the LOI.  See Doc. 60 at p. 6.  It is also undisputed that the LOI expired by its own terms on October 27, 2014, and thus is no longer in effect.  (Id. at 8.)

Based on the above, FCA is entitled, as a matter of law, to the declaratory relief that it has requested:  Eagle breached the LOI and FCA was entitled to terminate it and the LOI expired by its own terms on October 27, 2014, and is no longer in effect.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: September 12, 2016
        Detroit, Michigan

15